**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85372-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| | UNPUBLISHED OPINION |
| DEVON SKYE EVANS, | |
| Appellant. | |

FELDMAN, J. — Devon Skye Evans appeals his conviction for possession of a controlled substance with intent to manufacture or deliver. He argues (a) there was insufficient evidence to support his conviction, (b) the trial court abused its discretion when it admitted "untested blue pills" as evidence of guilt, (c) the prosecutor committed misconduct, and (d) his counsel provided ineffective assistance. Evans also requests that the case be remanded to the trial court to strike the Victim Penalty Assessment (VPA) imposed at sentencing. We remand to the trial court to strike the VPA, but in all other respects we affirm.

I

On November 15, 2022, Lynnwood Police Officer Tanner Hedlund drove to the apartment complex where Evans resided to apprehend Evans pursuant to a felony arrest warrant. From his patrol vehicle, Hedlund observed Evans exit the

passenger side of a pickup truck in the parking lot of the complex. Hedlund then approached Evans and told him to "stop" and "take your hand out of your pocket." Evans ran away, and Hedlund ran after him.

After Evans rounded the corner of the north end of the apartment building, Hedlund lost sight of him. During the time Hedlund could not see Evans, Hedlund heard a "thud." Hedlund eventually caught up to Evans, tackled him, and placed him under arrest. A handgun was found in a bush by the north side of the building near where Evans was running when Hedlund heard the "thud." After a search incident to arrest, Hedlund found a "holster, $200 in cash all in 20s, brass knuckles," and a jar of blue pills, marked "M30," on Evans' person.

After the search incident to arrest, the pickup truck was impounded and lawfully searched pursuant to a search warrant. During the search, Hedlund found a black Nike bag on the floor of the passenger side of the truck. Inside the bag, Hedlund found "a scale with some residue on it, a knife, some baggies, . . . and some rubber bands." Additionally, Hedlund found more blue pills marked "M30" inside the bag. The pills were sent to the Washington State Crime Laboratory, where one of the pills retrieved from the black Nike bag was tested and found to contain fentanyl.

Based on the forgoing facts, the State charged Evans with unlawful possession of a firearm in the first degree and possession of a controlled substance (fentanyl) with intent to manufacture or deliver with a special allegation

of a firearm enhancement.[1]  Evans moved to suppress the blue pills found on his person, arguing "[w]ithout testing a pill from the sample found on Mr. Evans' person, the State cannot say that the pills found on Mr. Evans' person were fentanyl."  The trial court denied the motion to suppress and found that possession of the pills was relevant to whether Evans may have possessed the other similarly-marked and similarly-shaped pills found in the pickup truck.

The jury convicted Evans of both counts.  Following trial, Evans filed a motion for judgment notwithstanding the verdict with regard to the conviction of possession of a controlled substance with intent to deliver.  The court denied the motion, reasoning that sufficient evidence supported the jury's verdict.  Thereafter, Evans was sentenced to 108 months of confinement.  Evans appeals.

II

A

Evans argues that the trial court erred in "[a]dmitting the untested blue pills," which he claims were inadmissible under ER 403.  We disagree.

Under ER 403, relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice."  "We review decisions to admit evidence using an abuse of discretion standard."  *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014).  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  *State v. Ferguson*, 25 Wn. App. 2d 727, 735, 524 P.3d 1080 (2023).

---

[1] The State also charged Evans with a separate count of possession of a controlled substance (methamphetamine) with intent to manufacture or deliver; however, the trial court dismissed this count on Evans' motion before opening statements due to "insufficient evidence to prove possession with intent solely on the methamphetamine."

There was no abuse of discretion here.  The pills found on Evans' person were relevant to show that Evans also possessed the pills found in the black Nike bag, when considering that the pills were similar and that Evans was seen exiting the passenger side of the vehicle where the black Nike bag was found one minute before being arrested.  Because the blue pills found on Evans' person were not tested for the presence of a controlled substance, the trial court instructed the jury that the blue pills found on Evans' person may be considered "only in determining whether or not Mr. Evans possessed [the black Nike bag] and the items that were found therein [(the fentanyl pills)] and for no other purpose."  This instruction eliminated any unfair prejudice in admitting the untested pills.  *State v. Jackson*, 145 Wn. App. 814, 824, 187 P.3d 321 (2008) ("Juries are presumed to follow instructions.").  On this record, Evans has not shown that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.

Relatedly, Evans argues that the trial court abused its discretion by failing to conduct an ER 403 analysis "on the record."  Evans relies on *State v. Powell*, 126 Wn.2d 244, 893 P.2d 615 (1995), to support this argument, but his reliance on *Powell* is misplaced.  The trial court there admitted evidence of prior bad acts (threats and other misconduct) under ER 404(b).  *Id.* at 264.  Where, as here, a trial court admits evidence despite an ER 403 objection, our Supreme Court has held:

> Admissibility of evidence under ER 403, unlike ER 404(b) and ER 609, does not depend on the purpose for which it is offered. Thus, the rationale for requiring the trial court to weigh its decision on the record under ER 404(b) and ER 609 is not present in the case of an ER 403 objection.

*Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610 (1994). Thus, the trial court did not abuse its discretion or otherwise err by failing to weigh on the record the probative value of this evidence against the danger of unfair prejudice. Nor did the trial court abuse its discretion in admitting the untested blue pills, particularly given its limiting instruction.

B

Evans argues there is insufficient evidence to support his conviction for possession of a controlled substance with intent to manufacture or deliver. We disagree.

To decide whether sufficient evidence supports a jury's verdict, the court must determine "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt.*" State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In determining this issue, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Additionally, "Circumstantial and direct evidence are equally reliable, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence." *State v. Raleigh*, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010).

Focusing solely on the first element of the charged offense—that "the defendant possessed Fentanyl"—Evans claims that the "prosecution failed to prove [he] possessed the fentanyl pills found in [the] vehicle." Regarding that element, the trial court instructed the jury as follows:

Possession means having a substance in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the substance.

Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.

In deciding whether the defendant had dominion and control over a substance, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the substance, whether the defendant had the capacity to exclude others from possession of the substance, and whether the defendant had dominion and control over the premises where the substance was located. No single one of these factors necessarily controls your decision.

Evans did not object to this instruction, so it is "law of the case." *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Additionally, under controlling case law, "[w]hen a person has dominion and control over a premises, there is a rebuttable presumption that the person has dominion and control over items on the premises." *State v. Listoe*, 15 Wn. App. 2d 308, 327, 475 P.3d 534 (2020) (quoting *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010)).

Here, considering the relevant considerations, a rational juror could properly find that Evans was in constructive possession of the fentanyl found in the black Nike bag. Hedlund testified that he saw Evans exit the passenger side of the vehicle where the black Nike bag was found on the floor of the vehicle. Hedlund testified that the bag would have been situated by Evans' knees when he was sitting in the passenger seat. Thus, before exiting the vehicle, Evans had the

immediate ability to take actual possession of the controlled substance. Further, considering the close proximity of the bag to Evans, he had the ability to exclude others from possession of the fentanyl, including the driver. This evidence, viewed favorably to the prosecution, is sufficient to persuade a rational fact finder that Evans unlawfully possessed a controlled substance.

Notwithstanding the above evidence and analysis, Evans argues "no evidence beyond mere proximity connected Mr. Evans to the fentanyl pills found" in the vehicle. Evans relies on *State v. George*, 146 Wn. App. 906, 193 P.3d 693 (2008), to support this argument. In *George*, George was convicted of drug possession and drug paraphernalia possession when police found a marijuana pipe on the floor of the backseat of the car near his feet. *Id.* at 912-13. The court of appeals reversed, reasoning that there was nothing more than mere proximity to link George to the pipe because there was no evidence that George had a history of using marijuana, no drugs or paraphernalia were found on his person, no testimony ruled out the other occupants in the car as the owner of the pipe, and no fingerprint evidence linked George to the pipe. *Id.* at 922.

Here, in contrast, the State did not rely on mere proximity, but provided evidence of proximity *in addition* to other circumstances linking Evans to the fentanyl pills. Unlike George, Evans was found with blue pills on his person that were similarly marked and of a similar size, shape, and color as the fentanyl pills found in the black Nike bag, along with items that the trial court noted (based on Hedlund's testimony) could be indicative of drug dealing, such as brass knuckles, $200 in cash, and a holster. Additionally, the only other occupant in the pickup

truck, its owner Sadia Mazen, consented to the police searching the truck, which Hedlund testified would be unexpected for someone who knew there were drugs in the vehicle. Thus, unlike the State in *George*, the State here permissibly relied on "evidence of proximity coupled with 'other circumstances linking the defendant to the [fentanyl pills].'" *George*, 146 Wn. App. at 921 (quoting *State v. Mathews*, 4 Wn. App. 653, 658, 484 P.2d 942 (1971)).

In short, sufficient evidence supports the conviction for possession of a controlled substance with intent to manufacture and deliver.

C

Evans argues that the prosecutor committed misconduct by appealing to juror's emotions and inappropriately raising the specter of the war on drugs during voir dire and closing argument. We disagree.

To prevail on a prosecutorial misconduct claim, the defendant must show that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Where, as here, the defendant did not object to the alleged instances of prosecutorial misconduct, the defendant must show on appeal that "the misconduct was so flagrant and ill-intentioned that (1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the resulting prejudice had a substantial likelihood of affecting the jury verdict." *State v. Mireles*, 16 Wn. App. 2d 641, 656, 482 P.3d 942 (2021). We review the prosecutor's conduct in the context of the whole argument, issues of the case, evidence addressed in the argument, and jury instructions. *State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P.3d 458 (2021).

In *State v. Loughbom*, 196 Wn.2d 64, 470 P.3d 499 (2020), our Supreme Court recognized that a prosecutor's repeated references to the war on drugs can rise to the level of flagrant and ill-intentioned misconduct. The prosecutor in *Loughbom* referred to the war on drugs in the State's opening argument, rebuttal, and closing argument and framed the case as "another battle in the ongoing war on drugs throughout our state and throughout our nation as a whole." *Id.* at 68. Our Supreme Court held, "The prosecutor's repeated invocation of the war on drugs was a thematic narrative designed to appeal to a broader social cause that ultimately deprived Loughbom of a fair trial." *Id.* at 70. The court explained such "'[r]epetitive misconduct can have a cumulative effect'" and remanded the matter for a new trial. *Id.* at 77-78 (quoting *State v. Allen*, 182 Wn.2d 364, 376, 341 P.3d 268 (2015) (internal quotation marks omitted)).

Contrary to Evans' argument, the prosecutor's references in this case to enforcement of drug laws are not analogous to the prosecutorial misconduct in *Loughbom*. During voir dire, the prosecutor asked prospective jurors if they believed "the State should not be getting involved with fentanyl distribution?" The question appropriately probed the potential jurors' beliefs regarding an issue at the heart of the case: the role of law enforcement in addressing illegal drug use. Unlike the prosecutor in *Loughbom*, the prosecutor in this case did not frame the case as "another battle in the ongoing war on drugs throughout our state and throughout our nation as a whole." 196 Wn.2d at 68. Nor did the prosecutor repeatedly emphasize this point throughout the trial, as the prosecutor did in *Loughbom*. Instead, the issue arose briefly during voir dire and not within the trial

itself. Lastly, even if the prosecutor's conduct was improper, a curative instruction would have obviated any prejudicial effect on the jury. On this record, Evans cannot establish misconduct or prejudice as required by *Mireles* (quoted above) and similar cases.

Evans attempts to show repeated misconduct, similar to *Loughbom*, by pointing to the prosecutor's references to voir dire during closing argument. During her closing argument, the prosecutor asked jurors to "go back to voir dire for a minute . . . . [T]here were comments made regarding the connection between guns and drugs and dangerous activities and that those two are often coupled together." This, Evans claims, rises to the level of repeated misconduct similar to that in *Loughbom*. But this argument mischaracterizes the prosecutor's comments during closing argument. The prosecutor was not invoking the war on drugs or recalling the dangers of fentanyl, but was instead suggesting that the fact that Evans had an empty holster on his person was circumstantial evidence that he was distributing drugs—a theme that had been introduced earlier in the case when both the prosecutor and defense counsel questioned the jury about the connection between guns and dangerous activities. Evans' argument that this case involves repeated misconduct and is in that sense analogous to *Loughbom* thus fails.

Because Evans has not shown that the conduct at issue was so flagrant and ill-intentioned that no curative instruction would have obviated any prejudicial effect on the jury or that any resulting prejudice had a substantial likelihood of affecting the jury verdict, his prosecutorial misconduct claim fails.

D

Evans argues that his defense counsel was ineffective for failing to object to (a) the prosecutor's questioning during voir dire regarding the role of law enforcement in addressing illegal drug use and (b) opinion testimony of Hedlund. We disagree.

A defendant alleging ineffective assistance of counsel must establish that (a) "counsel's performance was deficient" and (b) "the defendant was prejudiced by the deficient performance." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984)). "Performance is deficient if it falls 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *State v. State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). There is a strong presumption of effective assistance, which "is not overcome if there is any 'conceivable legitimate tactic' that can explain counsel's performance." *In re Det. of Hatfield*, 191 Wn. App. 378, 402, 362 P.3d 997 (2015) (quoting *State v. Reichenbach*, 153 Wash.2d 126, 130, 101 P.3d 80 (2004)). "Prejudice exists if there is a reasonable probability that 'but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). And although it is lower than a preponderance standard, a "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

Evans' first argument—that his defense counsel provided ineffective assistance of counsel by failing to object to the prosecutor's questioning regarding the impact of fentanyl in the community during voir dire—easily fails. Given the prosecutor's limited questioning on the topic (as in part II.C above recounts), Evans' defense counsel may have chosen to refrain from objecting to the questioning to avoid drawing additional attention to it. *See, e.g., State v. McDaniel*, 155 Wn. App. 829, 862, 230 P.3d 245 (2010) (counsel "may have had tactical reasons not to ask for a limiting instruction, namely, to not call attention to the incriminating stipulation"). Thus, the failure to object could have been a legitimate trial strategy or tactic, which is fatal to Evans' ineffective assistance of counsel claim. *See Hatfield*, 191 Wn. App. at 402 (cited and quoted above). Additionally, as discussed below, Evans fails to show prejudice.

Evans' second argument—that his defense counsel provided ineffective assistance of counsel by failing to object to Hedlund's opinion testimony—similarly fails. Relevant to this argument, Hedlund was asked, "based on your training and experience, what did the combination of the scale, the baggies, the pills, the weapons in their totality indicate to you?" He answered:

> That Mr. Evans was in possession of a controlled substance with packaging materials, things to weigh them, additional packaging materials, including rubber bands, ways to cut them that would be indicative that he was distributing them along with cash as well.

Evans contends that defense counsel should have objected to this answer because Hedlund improperly opined on the issue of guilt, which in turn violated Evans' constitutional right to a jury trial. *See, e.g., State v. Montgomery*, 163 Wn.2d 577, 594, 183 P.3d 267 (2008) ("Opinions on guilt are improper whether

direct or by inference.").

Even if we assume, without deciding, that defense counsel's failure to object to this testimony was deficient performance, Evans has failed to establish prejudice. That is so because there is overwhelming evidence of guilt, including constructive possession of fentanyl pills moments before fleeing from law enforcement, drug paraphernalia found in the black Nike bag, and actual possession of pills that have the same appearance as the fentanyl pills found in the black Nike bag in the pickup truck. Thus, it is not reasonably probable that the outcome of the proceedings would have been different had defense counsel objected to the testimony at issue.

Evans claims that this case is analogous to *State v. Vazquez,* 198 Wn.2d 239, 494 P.3d 424 (2021), but *Vazquez* is distinguishable. In *Vazquez*, defense counsel repeatedly failed to object to evidence of Vazquez's prior convictions, testimony implying Vazquez threatened two witnesses, hearsay statements regarding Vazquez's alleged drug sales, and police testimony linking the ownership of a tactical vest to selling drugs. *Id.* at 250. The court concluded that this evidence was inadmissible and "highly prejudicial" and that Vazquez had satisfied *Strickland*'s prejudice prong because "the cumulative effect of counsel's subpar performance likely affected the outcome of the case." *Id.* at 245, 268-69. Here, in contrast, Evans focuses narrowly on defense counsel's failure to object to an isolated answer in a trial that included overwhelming evidence of guilt. Whereas Vazquez was able to establish prejudice, Evans has not. His ineffective assistance

of counsel based on defense counsel's failure to object to Hedlund's purported opinion testimony thus fails.

VI

Finally, Evans argues, and the State agrees, that we should remand his case to the trial court to strike the $500 VPA imposed during sentencing. Under the recently amended RCW 7.68.035, no VPA may be imposed upon an indigent defendant. Although the amended statutes took effect after Evans' sentencing, they apply here because Evans' case is on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). At sentencing, Evans was found to be indigent. We therefore remand for the trial court to strike the VPA from Evans' judgment and sentence.

In all other respects, we affirm.

_____
Feldman, J.

WE CONCUR:

_____          _____